GAF SALES & SERVICE, INC v HASTINGS MUTUAL INSURANCE
COMPANY

Docket No. 187589. Submitted March 12, 1997, at Lansing. Decided June
20, 1997, at 9:05 A.M. Leave to appeal sought.

GAF Sales & Service, Inc., and others brought an action in the Oak-
land Circuit Court against Hastings Mutual Insurance Company,
alleging that the defendant breached a contract to insure the plain-
tiffs for commercial general liability in refusing to defend the plain-
tiffs against an action by CogniSense, Inc., which alleged that the
plaintiffs had bought and sold software in violation of CogniSense's
copyright. The court, Barry L. Howard, J., granted summary dispo-
sition for the defendant, ruling that the claim raised against the
plaintiffs did not relate to an advertising injury for which the policy
provided coverage. The plaintiffs appealed by leave granted.

The Court of Appeals *held*:

The policy at issue provided coverage for those sums that the
insured became legally obligated to pay as damages because of
advertising injury, i.e., injury caused by an offense committed in
the course of advertising goods, products, or services, including the
misappropriation of advertising ideas or style of doing business or
the infringement of copyright, title, or slogan. The cause of
CogniSense's injuries was not the plaintiffs' advertising, but was
their buying and selling of the software. Accordingly, because there
was no causal connection between the alleged advertising injury
and the plaintiffs' activities, the defendant was under no duty to
defend the plaintiffs.

Affirmed.

INSURANCE — COMMERCIAL LIABILITY — ADVERTISING INJURIES.

An insurance policy covering liability for injury caused by an offense
committed in the course of advertising goods, products, or ser-
vices, including injury arising out of the misappropriation of adver-
tising ideas or style of doing business or the infringement of copy-
right, title, or slogan, obligates an insurer to defend an insured
against an action for damages only where there is an advertising
injury as defined by the policy, a course of advertising, and a
causal relationship between the injury and the course of
advertising.

*Dinnin & Dunn, P.C.* (by *Robert A. Dunn* and *Michael T. Raggio*), for the plaintiffs.

*Kallas & Henk, P.C.* (by *Constantine N. Kallas* and *Kathlyn M. Rasmussen*), for the defendant.

Before: McDONALD, P.J., and GRIFFIN and BANDSTRA, JJ.

McDONALD, P.J. Plaintiffs appeal by leave granted from a January 23, 1995, order granting defendant's motion for summary disposition in this action arising out of an insurance contract between the parties. We affirm.

The facts are not in dispute. The individual plaintiffs were originally employed by Cochlea Corporation. Cochlea manufactured sorting machines that inspect industrial fasteners to determine if they meet a predetermined quality standard. The machines rely on complex computer software. When Cochlea sold the machines, it did not sell the software that ran them. Instead, it granted the purchaser a license to use the software.

After Cochlea defaulted on some of its financial obligations, plaintiffs were laid off, and the rights to the software were assigned to the underlying plaintiff, CogniSense, Inc. After being laid off, the individual plaintiffs formed GAF Sales & Service, Inc., and began buying and reselling used Cochlea inspection equipment. CogniSense alleged this activity violated the software copyrights and sued plaintiffs in federal court. Plaintiffs asked defendant to defend them under an "advertising injury" clause in their commercial general liability policy. When defendant refused, plaintiffs filed the instant action. Plaintiffs now

appeal from the trial court's grant of summary disposition in favor of defendant.[1]

The only question on appeal is whether the trial court properly found as a matter of law defendant had no duty to defend plaintiffs in federal court. It is well settled in Michigan that an insurer's duty to defend is broader than its duty to indemnify. To determine whether an insurer has a duty to defend its insured, this Court looks to the language of the insurance policy and construes its terms to find the scope of the coverage of the policy. An insurer has a duty to defend if the allegations of the underlying suit arguably fall within the coverage of the policy. *Royce v Citizens Ins Co*, 219 Mich App 537; 557 NW2d 144 (1996). In construing the language of the policy, this Court must give the policy language its plain meaning and resolve any ambiguities against the insurer and in favor of coverage. *Id.*

The policy at issue provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' . . . ." The insurer has "the right and duty to defend any 'suit' seeking those damages." The policy states the insurance applies to an " 'advertising injury' caused by an offense committed in the course of advertising . . . goods, products or services." The definition section of the policy defines an "advertising injury" as including an injury arising out of the "misappropriation of advertising ideas or style of doing

---

[1] Defendant brought its motion for summary disposition under MCR 2.116(C)(8) and (10). Although the trial court did not indicate which rule it was relying on in granting the motion, because the court considered documents other than the pleadings, we will treat the motion as one granted under MCR 2.116(C)(10).

business" or the "infringement of copyright, title or slogan."

The policy coverage for "advertising injury" thus requires three elements: an "advertising injury" as defined in the policy; a "course of advertising" (not defined in the policy); and proof of a causal relationship between the first two elements.[2]

The underlying complaint contains allegations of (1) copyright infringement, that plaintiffs copied software, installed it in a refurbished inspector, and distributed it to third parties; (2) misappropriation of trade secrets through plaintiffs' retention of copies of drawings and software for the machine, and utilization of CogniSense's customer lists to obtain old inspectors and software; and (3) interference with contractual relations by inducing "various customers into breaching the License by creating the only market for the used Inspectors."

Applying the elements of coverage to the allegations in the underlying complaint, we must determine whether any of the counts arguably allege an "advertising injury" as defined in the policy. Defendant does not dispute the underlying suit contained allegations of copyright infringement and that copyright infringement is one of the listed offenses under the advertising-injury definition. Although the remaining counts do not fall directly within the definition in the policy, plaintiffs argue the counts arguably fall within the

---

[2] Here, the language of the policy specifically states the insurance applies to an advertising injury "caused" by an offense committed in the course of advertising. See *Advance Watch Co, Ltd v Kemper Nat'l Ins Co*, 99 F3d 795 (CA 6, 1996). The majority rule is that the advertising injury must have a causal connection with the advertising activities. *Poof Toy Products, Inc v United States Fidelity & Guaranty Co*, 891 F Supp 1228 (ED Mich, 1995).

"misappropriation of advertising ideas or style of doing business" language of the policy. We disagree.

The trade secret count alleges plaintiffs improperly retained drawings and software and utilized customer lists to obtain and transfer software and used machines. We do not believe any of these activities constitute a misappropriation of advertising ideas or style of business.[3] Similarly, the counts of interference with contractual relations are devoid of any allegations of misappropriation of advertising ideas or style of business, or of any infringement of title or slogan. Nonetheless, because if any theory falls within the policy, the insurer owes a duty to defend the suit, *Reurink Bros Star Silo, Inc v Maryland Casualty Co*, 131 Mich App 139; 345 NW2d 659 (1983), we must address the next questions, whether the actions alleged in the complaint constitute "advertising" and whether there is a causal connection between the advertising and the injury.

The term "advertising" is not defined in the policy. Not surprisingly, the parties propose divergent definitions. Defendant proposes a definition that would limit advertising to those "widespread promotional activities directed to the public at large."[4] Plaintiff proposes a definition that would include "any oral, written, or graphic statement made by the seller in

---

[3] We are not persuaded by the logic in *Merchants Co v American Motorists Ins Co*, 794 F Supp 611, 618 (SD Miss, 1992) wherein the court stated without citation of any authority its belief that "although 'advertising ideas' is not defined in either policy, the Court is of the opinion that in the ordinary or popular sense, a customer list may be fairly said to be an 'advertising idea.' "

[4] This definition appears to have been adopted by a majority of published decisions. See *Bank of the West v Superior Court*, 2 Cal 4th 1254; 10 Cal Rptr 2d 538; 833 P2d 545 (1992), and *Select Design, Ltd v Union Mutual Fire Ins Co*, ___ Vt ___; 674 A2d 798 (1996).

any manner in connection with the solicitation of business." Because we find plaintiffs' allegations of placement of an advertisement in a national trade magazine and direct-mail solicitation to the relevant market meet either proposed definition, we need not decide whether to apply a broad or restrictive definition of the term "advertising." However, we do note the existence of Michigan precedent adopting a very broad definition of advertising, see *People v Montague*, 280 Mich 610; 274 NW 347 (1937),[5] as well as the ability of insurance companies to provide a clear definition of the term in their policies.

Finally, assuming the underlying counts allege advertising injuries and that plaintiffs' activities constituted advertising, the question remains whether a causal connection exists between the advertising and the injuries. According to the language of the policy, "[t]his insurance applies to: 'advertising injury' caused by an offense committed in the course of advertising." The underlying complaint does not allege any injuries that resulted from plaintiffs' advertising. Instead, the complaint alleges injuries from plaintiffs' purchase and resale of copyrighted software. Thus, the cause of the injuries was not plaintiffs' advertising, but rather their buying and selling of the software. See

---

[5] In *Montague*, *supra* at 619, the Court cited the definition of advertising contained in 2 CJS 890:

"To advise, to announce, to apprise, to command, to give notice of, to inform, to make known, to notify, to publish," etc.

"It has been said that originally the word (advertising) meant 'noticing,' or 'observing,' but gradually became extended until now it means 'making public intimation or announcement of anything,' whether by publication in newspapers, or by handbills, or by oral proclamation."

*Sentry Ins A Mut Co v Flom's Corp*, 818 F Supp 187 (ED Mich, 1993) (the court found there was no duty to defend because the underlying complaint sought damages caused by the actual price fixing, not damages resulting from the advertising of those prices). Because there was no causal connection between the alleged advertising injury and plaintiffs' advertising activities, summary disposition was properly entered in favor of defendant.

Affirmed.