### AMWAY DISTRIBUTORS BENEFITS ASSOCIATION, et al., Plaintiffs,

v.

### FEDERAL INSURANCE COMPANY, an Indiana corporation, Defendant.

No. 1:96–CV–726.

United States District Court, W.D. Michigan, Southern Division.

Nov. 26, 1997.

Jasper A. Cragwall, Jr., Warner, Norcross & Judd, LLP, Grand Rapids, MI, Donald L. Payton, Kaufman & Payton, Farmington Hills, MI, for Plaintiffs.

Steven M. Hickey, Hickey & Cianciolo, PC, Detroit, MI, for Defendant.

## OPINION

QUIST, District Judge.

In this action, Plaintiffs, Amway Distributor Benefits Association ("ADBA") and several distributor members of ADBA ("Distributor Plaintiffs"), seek a declaration that Defendant, Federal Insurance Company ("Federal"), is obligated to defend the Distributor Plaintiffs in an action pending in the United States District Court for the Middle District of Florida, captioned *Arista Records, Inc., et al. v. Amway Corp., et al.,* Docket No. 96–175–CV–ORL–18, under certain comprehensive general liability policies of insurance issued by Federal to ADBA. Plaintiffs' first amended complaint asserts claims against Federal for breach of contract (Count I), fraud or negligent misrepresentation (Count II), unfair trade practices and fraud (Count III), and declaratory judgment regarding coverage (Count IV). Now before the Court are the parties' cross-motions for summary judgment on Count IV, and Federal's motion for summary judgment and/or dismissal on Counts I, II, and III of the first amended complaint.[1]

1. Plaintiffs' original complaint alleged three claim against Federal for breach of contract (Count I), breach of covenant of good faith and fair dealing. (Count II), and declaratory judg-ment regarding coverage (Count III). On January 9, 1997, the Court granted Federal's Rule 12(b)(6) motion and dismissed Count II. On March 13, 1997, the Court granted Plaintiffs'

*Facts*

The Distributor Plaintiffs are high-level distributors of Amway Products and members of ADBA. Amway Corporation ("Amway") is a multinational company which sells household products produced by Amway itself and by other companies. Amway distributes its products through a system commonly referred to as "network marketing," which consists of multiple layers of independent distributors. Under this system, distributors become successful by constantly recruiting new distributors, or "down-liners," who are encouraged to purchase and use Amway products themselves and to recruit their own new distributors. A distributor's success is thus dependent upon building a large base of downliners.

Distributors ascend the ranks by attaining "Direct" status and advancing to "Pearl," then "Ruby," then "Emerald," then "Diamond," and beyond, as their distributor base expands. Distributors who attain Diamond status are permitted to hold motivational rallies and conventions for their "downliners," the vast majority of whom are at the lowest level and comprise the majority of Amway's customer base.

Beginning in 1981 and continuing through 1995, ADBA purchased primary policies of liability insurance from Federal to provide liability coverage for ADBA's members. Each of the policies provided advertising injury coverage. Until 1992, the policy years commenced and ended on May 30. The policies for May 30, 1981, through May 30, 1987, defined "advertising injury" as follows:

> injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

(First Am.Compl.Ex. 1.)

The policy issued for May 30, 1987 – May 30, 1988, contained both the definition quoted above and a new definition, which provided:

ADVERTISING INJURY

> means injury arising solely out of one or more of the following offenses committed in the course of advertising your goods, products or services:
>
> 1. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> 2. oral or written publication of material that violates a person's right of privacy;
>
> 3. misappropriation of advertising ideas or style of doing business; or
>
> 4. infringement of copyrighted advertising materials, titles or slogans.

(First Am.Compl.Ex. 2.) At or about the time that Federal issued the 1987–1988 policy to ADBA, Federal provided a notice to ADBA which stated, "READ YOUR POLICY CAREFULLY to determine rights, duties, and what is and is not covered." (First Am.Compl.Ex. 4.) The policies issued after the 1987–88 policy contained only the latter definition of advertising injury. Federal also issued excess liability policies to ADBA covering the period of May 30, 1988, through December 31, 1996.

In February of 1996, several record companies filed a complaint against Amway and several of the Distributor Plaintiffs giving rise to the *Arista Records* action mentioned above. Additional Distributor Plaintiffs were later added as defendants. The Arista plaintiffs allege that from 1988 through 1994, the Distributor Plaintiffs produced and published videotapes which infringed upon the Arista

motion for leave to file their first amended complaint. Counts I and IV of the first amended complaint are Counts I and III, respectively, of the original complaint. In the March 13, 1997, Order, the Court indicated that it would treat Federal's previously filed motion for partial summary judgment on Counts I and III of the original complaint as its motion for partial summary judgment on Counts I and IV of the first amended complaint. The Court also indicated

that it would treat Federal's brief in opposition to Plaintiffs' motion for leave to file their first amended complaint as Federal's motion to dismiss counts II and III of the first amended complaint. Thus, the Court will consider Federal's pending motions as seeking summary judgment on counts I and IV, and as seeking summary judgment and/or dismissal on all counts II and III.

plaintiffs' copyrights under federal and state law. The Arista plaintiffs also allege unfair competition and conversion. More specifically, the underlying second amended complaint alleges in part:

7. In addition to increased income, once a distributor reaches "Diamond" status, he or she is permitted to hold conventions and conferences for his or her downliners. These events take place all over the country and are attended by thousands and thousands of Amway distributors.

8. As more specifically set forth below, the Defendants produced videotapes, utilizing sound recordings as to which the Plaintiffs hold copyrights and ownership rights. The videotapes were used by the Amway distributor Defendants as motivational tools, as sales tools, to recruit new Distributors and to promote upcoming Amway Distributor conventions and conferences. The infringing videotapes were sold by the Amway distributor Defendants at the Amway conventions and conferences, through the mails, and otherwise.

\* \* \*

11. Although the Amway distributors are ostensibly in the business of selling the products Amway offers for sale, the majority of the upper-echelon distributors' income is derived from the sale of motivational tools and from the motivational rallies and weekends. There is in fact more pressure exerted by the upper-echelon Amway distributors for their downliners to purchase large quantities of motivational tools for their own use and for resale to their own downliners, than there is to buy and sell Amway products.

12. The motivational tools, of which the infringing videos are one important aspect, contribute to the high-level Amway distributors' income in various ways: (1) the videos are products themselves; (2) the videos are commercials for the motivational rallies and conventions; (3) the videos are commercials for other profitable ventures, such as yacht charters; (4) the videos are used at the motivational rallies and conventions to encourage the distributors' downliners to recruit distributors and to buy and sell motivational tools; (5) the videos are used to lend excitement and contribute generally to the overall success of the motivational rallies and weekends; (6) the videos are used outside the context of the motivational rallies and weekends to recruit new distributors and to buy and sell motivational tools; and (7) the videos are used to sell Amway products.

(Arista's Second Am.Compl. ¶¶ 7, 8, 11, 12, attached as Ex. 10 to Pls.' First Am.Compl.) The Arista complaint asks the court to enjoin the defendants from infringing the Arista plaintiffs' copyrights permanently, to pay the Arista plaintiffs any profit made as a result of the infringement, and to return all infringing materials for destruction.

ADBA and the Distributor Plaintiffs tendered the defense of the underlying action to Federal. Federal denied coverage on the basis that the allegations of the underlying complaint do not trigger the duty to defend. Plaintiffs filed the instant action seeking a declaration that Federal is obligated to provide a defense in the underlying action.

### Standards of Review

Under Rule 12(b)(6), an action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2 James W. Moore, *Moore's Federal Practice*, ¶ 12.34[1][b] (3d ed.1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill and Dauphin Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

*Discussion*

Federal contends that summary judgment should be granted on Counts I and IV of the first amended complaint, and that summary judgment or dismissal for failure to state a claim should be granted on Counts II and III. Federal argues that the allegations of the Arista complaint do not fall within the scope of advertising injury coverage under the policies and that it therefore has no duty to defend the Distributor Plaintiffs in that action. Federal further argues that Plaintiffs have no claim for fraud and misrepresentation or unfair trade practices because Federal made no misrepresentations to Plaintiffs about the scope of advertising injury coverage. Plaintiffs contend that they are entitled to summary judgment on Count IV of their first amended complaint because the underlying allegations trigger advertising injury coverage.

## I. Declaratory Judgment

### A. *Duty to Defend*

An insurer's duty to defend its insured against a lawsuit is separate from the duty to indemnify. *Allstate Ins. Co. v. Maloney*, 174 Mich.App. 263, 268, 435 N.W.2d 448, 450 (1988) (per curiam).[2] The duty to defend is also broader than the duty to indemnify. *GAF Sales & Serv., Inc. v. Hastings Mut. Ins. Co.*, 224 Mich.App. 259, 261, 568 N.W.2d 165, 167 (1997). The scope of the duty has been defined as follows:

"The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage.... The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible ... In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor."

---

**2.** A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). In this case, the parties agree that the policies were issued in Michigan and that Michigan law governs the interpretation of the policies.

*State Farm Fire & Cas. Co. v. Huyghe,* 144 Mich.App. 341, 345, 375 N.W.2d 442, 443–44 (1985) (per curiam) (quoting *Detroit Edison Co. v. Michigan Mut. Ins. Co.,* 102 Mich.App. 136, 141–42, 301 N.W.2d 832, 835 (1980) (citations omitted)).

■ In interpreting the meaning of the insurance policies at issue in this case, the Court must give the words used their plain and ordinary meaning and apply the definitions set forth in the contract. *GAF Sales,* 224 Mich.App. at 261, 568 N.W.2d at 167. The definition of a term may be established by reference to a dictionary. *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.,* 445 Mich. 558, 568, 519 N.W.2d 864, 869 (1994). Any ambiguity in the terms of the policy must be construed against the insurer and in favor of coverage. *Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.,* 99 F.3d 795, 800 (6th Cir.1996) (citing *Powers v. Detroit Auto. Inter–Ins. Exchange,* 427 Mich. 602, 622, 398 N.W.2d 411, 419 (1986)); *Royce v. Citizens Ins. Co.,* 219 Mich.App. 537, 542–43, 557 N.W.2d 144, 147 (1996), *appeal dismissed,* 560 N.W.2d 631 (Mich.1997).

As a preliminary matter, the Court must determine whether advertising injury coverage should be determined under the earlier definition or the later definition of "advertising injury". Plaintiffs have raised the argument, albeit in a roundabout way through their fraud and misrepresentation claim, that they are entitled to coverage under the earlier definition of advertising injury[3] because Federal failed to notify Plaintiffs of the reduction in coverage as a result of the change of definition.

Federal argues that Plaintiffs are precluded from asserting any right to rely on the earlier policy definition of advertising injury for claims occurring after May 30, 1988, because Federal sent a written notice to Plaintiffs at or around the time when the change occurred, which advised Plaintiffs to "READ [the] POLICY CAREFULLY to determine rights, duties, and what is and is not covered." (First Am.Compl.Ex. 4.)

■ Federal is correct that under Michigan law, an insured is obligated to read the insurance policy. *J.C. Wyckoff & Assoc. v.*

*Standard Fire Ins. Co.,* 936 F.2d 1474, 1494 (6th Cir.1991). However, where an insurer issues a renewal policy that reduces the level of coverage, the insurer has an affirmative obligation to notify the insured of this fact. *Id.* An insurer's failure to provide proper notice binds the insurer to the greater coverage in the earlier policy. *Id.*

The policies issued by Federal to ADBA from year-to-year were, in fact, renewal policies. Thus, the question is not whether Plaintiffs read the policy in which the change occurred, but whether Federal properly called the reduction in coverage to Plaintiffs' attention.

■ In *Koski v. Allstate Ins. Co.,* 213 Mich.App. 166, 539 N.W.2d 561 (1995), *appeal granted,* 562 N.W.2d 198 (1997), the court held that the adequacy of notice to an insured is an issue of law for the court to decide. 213 Mich.App. at 171, 539 N.W.2d at 563. The court found that the notice to the insured in that case, which consisted of a "single unemphasized reference in a twelve-page booklet," advising that " '[a]n exclusion has been added stating that we will not provide liability protection when members of the same household are engaged in a liability suit against each other,' " was insufficient as a matter of law to call the insured's attention to the reduction in coverage. *Id.* at 168, 171, 539 N.W.2d at 562–563. The court also rejected the insurer's argument that its suggestion in a cover letter to the insured to " 'take a few minutes to read [his] new policy,' " provided sufficient notice and found that "[t]he more significant fact about the cover letter is that it specifically noted several policy amendments favorable to the insured, but failed to mention any exclusion." *Id.* at 172, 539 N.W.2d at 563.

■ In the instant case, other than a general admonition to read the policy carefully, Federal did not inform Plaintiffs that advertising injury coverage had been reduced. Federal provided specific notice of a lower general aggregate limit, a more restrictive pollution liability exclusion, and new exclusions of coverage under the definition of mobile equipment. On the other hand, Federal assured Plaintiffs that advertising injury

---

**3.** Federal does not dispute that the earlier definition of advertising injury provides coverage for more types of alleged offenses than the later definition.

coverage, which was "the same type of coverage [Federal has] provided for years," was provided automatically. (First Am. Compl.Ex. 4.) Given that Federal chose to highlight other policy changes that reduced coverage, an insured would have had no reason to believe that advertising injury coverage had been affected at all.

■ Based upon the lack of notice by Federal to Plaintiffs of the reduction in advertising injury coverage, the Court concludes that Federal is bound to provide coverage under the earlier, more extensive, definition of advertising injury. *See Koski*, 213 Mich.App. at 173, 539 N.W.2d at 564. Federal may not rely on a general instruction to read the policy carefully as notice of a specific reduction in coverage. In this regard, Federal misinterprets the observation by the court in *Industro Motive Corp. v. Morris Agency, Inc.*, 76 Mich.App. 390, 256 N.W.2d 607 (1977) that the insurer did not argue that it instructed the insured to "read the policy carefully" or appended the policy change as a separate addition to the contract. *See* 76 Mich.App. at 396, 256 N.W.2d at 610 (citing *Government Employees Ins. Co. v. United States*, 400 F.2d 172, 174–75 (10th Cir.1968)). In *Government Employees*, the Tenth Circuit held that an instruction "to carefully read the contract," by itself, was insufficient to call attention to the change in coverage. *Id.* at 175. The court noted, "[h]owever, when coupled with the fact that the endorsement excluding the United States was attached as a separate addition to the contract, it becomes apparent that even a casual reading of the mailed material would result in informing the insured of the change." *Id.* Unlike the insurer in *Government Employees*, Federal has not offered anything more specific than its general warning to Plaintiffs to read the policy carefully. Thus, Federal failed to provide sufficient notice to Plaintiffs.[4]

■ In order to establish coverage for advertising injury under the insurance policies at issue, the insured must establish three elements: (i) that an offense covered by the policy has been alleged in the underlying complaint; (ii) that the acts of the insured alleged in the underlying complaint constitute a "course of advertising"; and (iii) that a causal connection exists between the advertising activities and the alleged injury. *See GAF Sales*, 224 Mich.App. at 262, 568 N.W.2d at 167; *see also Poof Toy Products, Inc. v. United States Fidelity & Guaranty Co.*, 891 F.Supp. 1228, 1232 (E.D.Mich.1995) (applying Michigan law but imposing additional requirement that injury complained of does not fall within an enumerated exception to coverage). The language of the Federal policies is consistent with the proof requirements set forth in *GAF Sales*.

### 1. Covered Offenses.

■ The Arista complaint alleges claims for copyright infringement, unfair competition, and conversion. Plaintiffs contend that these allegations give rise to coverage under the earlier definition of advertising injury for the covered offenses of unfair competition and copyright infringement. The primary claims alleged by the Arista plaintiffs assert that the Distributor Plaintiffs infringed the Arista plaintiffs' copyrights by incorporating various songs into videotapes without permission or authorization. Thus, the Court finds that the underlying complaint alleges the covered offense of "infringement of copyright."[5]

---

4. The Court's conclusion that Federal must provide coverage under the earlier definition of advertising injury obviates any need for the Court to address whether Plaintiffs have shown that the allegations in count 140 of the Arista complaint are covered under the 1987 – 1988 policy. This issue is rendered moot by the Court's determination that Plaintiffs are entitled to rely on the earlier definition of advertising injury.

5. Apparently presuming that the Court would address coverage under the later definition of advertising injury, Plaintiffs devoted much of their argument to the offenses contained under that definition. Plaintiffs argued that the Arista complaint alleged claims for "misappropriation of advertising ideas or style of doing business," and "infringement of copyrighted advertising materials, titles or slogans." (Pls.' Br. in Supp. Mot.Part.Summ.J. at 14–17.) Plaintiffs' reliance on these offenses is misplaced, because neither offense can be construed to cover the act of infringing a copyrighted song. Although the policies do not define the terms "misappropriation of advertising ideas" or "style of doing business," the Sixth Circuit and other courts have recognized that these terms have established meanings from case law or from their ordinary usage. *See Advance Watch*, 99 F.3d at 802 (finding that terms "advertising ideas" and "style of doing

■ On the other hand, the Court finds that the allegations of unfair competition by the Arista plaintiffs do not trigger coverage. While "unfair competition" is an enumerated offense, the mere reference to "unfair competition" without allegations that would support such a claim does not give rise to coverage. The majority of courts that have considered the issue have held that the term "unfair competition" contained in comprehensive general liability policies means the common-law tort, which includes "passing off" one's goods as those of another. *See Bank of the West v. Superior Ct.*, 2 Cal.4th 1254, 1263, 10 Cal.Rptr.2d 538, 833 P.2d 545, 551 (1992) (en banc); *see also Smartfoods, Inc. v. Northbrook Prop. & Cas. Co.*, 35 Mass.App.Ct. 239, 244, 618 N.E.2d 1365, 1368 (1993) (noting that the common-law tort of unfair competition implies palming off). Further, the majority of courts have held that unfair competition implies the use of an unfair competitive advantage. *See Tigera Group, Inc. v. Commerce & Indus. Ins. Co.*, 753 F.Supp. 858, 860–61 (N.D.Cal.1991) ("Absent the element of competition, there cannot be 'unfair' competition"); *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So.2d 400, 405 (Miss.1997) ("Clearly, at a minimum, 'unfair competition' must involve '[s]ome substantial component of competitive injury' ") (quoting *Keating v. National Union Fire Ins. Co.*, 995 F.2d 154, 155 (9th Cir.1993) (alteration in original)).

■ The claims in the underlying action are based solely upon the Distributor Plaintiffs' alleged unauthorized use of copyrighted songs. The Arista plaintiffs do not allege that they competed in business with the Distributor Plaintiffs. Thus, the Distributor Plaintiffs cannot be held liable for common law unfair competition because they were not in competition with the Arista plaintiffs. *Furniture Mfrs. Ass'n v. Grand Rapids Furniture Co.*, 6 Mich.App. 533, 537, 149 N.W.2d 887, 889 (1967).

### 2. Advertising Activities.

Federal contends that the Distributor Plaintiffs' distribution and use of the allegedly infringing videotapes could not possibly constitute advertising activities, because the underlying complaint alleges only that the tapes were disseminated to Amway distributors and not to the public at large. Plaintiffs counter that the Arista plaintiffs allege that the Distributor Plaintiffs used the tapes to recruit new distributors and to promote upcoming Amway conventions and conferences, and, therefore, such activity is advertising. The Court must determine whether advertising includes only those activities directed at the public, as opposed to activities directed at a defined group. The cases support both positions.

Several courts have held that advertising means widespread distribution of material to the public at large. *Fox Chemical Co. v. Great Am. Ins. Co.*, 264 N.W.2d 385, 386 (Minn.1978) (holding based upon broad terms such as "broadcasting"); *Playboy Enterprises, Inc. v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425, 429 (7th Cir.1985) (agreeing with *Fox Chemical* but also holding that dissemination of eleven letters was "related to" advertising); *Select Design, Ltd. v. Union Mut. Fire Ins. Co.*, 674 A.2d 798, 801–02 (Vt.1996); *MGM, Inc. v. Liberty Mut. Ins. Co.*, 17 Kan.App.2d 492, 495, 839 P.2d 537, 540 (1992); *Monumental Life Ins. Co. v. United States Fidelity & Guar. Co.*, 94 Md. App. 505, 525–26, 617 A.2d 1163, 1173–74 (1993); *Smartfoods*, 35 Mass.App.Ct. at 244, 618 N.E.2d at 1368 (1993); *Delta Pride*, 697 So.2d at 404.

On the other hand, a number of courts have held that advertising need not be widespread or aimed at the general public, but may include solicitation of only a few potential customers. *See John Deere Ins. Co. v.*

---

business" were not ambiguous and had either established dictionary meaning or meaning derived from case law); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys., Inc.*, 824 F.Supp. 583, 585 (E.D.Va.1993) (finding that term "style of doing business" had established meaning in case law as "a company's comprehensive manner of operating its business") The popular songs at issue in the underlying action are nothing more than popular songs. It is in-

conceivable that such songs could, without more, be considered a "style of doing business." Moreover, the fact did some of the songs may have been used in advertising by some third party does not render those works "advertising ideas" any more than a novel, a collection of short stories, or a poem could be considered an "advertising idea." The same reasoning holds true with regard to Plaintiffs' assertion that the songs are "copyrighted advertising materials."

*Shamrock Indus., Inc.,* 696 F.Supp. 434, 440 (D.Minn.1988), *aff'd,* 929 F.2d 413 (8th Cir. 1991) (holding that insured's acts of sending three letters to one customer promoting insured's product arguably constituted "advertising activity" in light of ambiguous meaning of phrase); *Sentex Sys., Inc. v. Hartford Accident & Indem. Co.,* 882 F.Supp. 930, 939 (C.D.Cal.1995) (mem.op.) (observing that "[w]hile some courts have construed (advertising activity) narrowly .... [t]he better view [ ] is that the term 'advertising' encompasses ... one-on-one and group solicitations"); *New Hampshire Ins. Co. v. Foxfire, Inc.,* 820 F.Supp. 489, 494 (N.D.Cal.1993) (mem.) ("Advertising activity must be examined in the context of the overall universe of customers to whom a communication may be addressed. Where the audience may be small, but nonetheless comprises all or a significant number of a competitor's client base, the advertising activity requirement is met"); *Attorneys' Title Guar. Fund, Inc. v. Maryland Cas. Co.,* No. 90 C 3916, 1991 WL 171339, at *4 (N.D.Ill. Aug.23, 1991)(finding term "advertising activity" ambiguous and broad enough to cover direct solicitation of lenders and property owners for purpose of inducing switch to competitor); *Ross v. Briggs & Morgan,* 520 N.W.2d 432, 435 (Minn.Ct.App.1994), *rev'd on other grounds,* 540 N.W.2d 843 (Minn.1995) (finding that letter sent by insured to 8,000 patients soliciting new business was clearly advertising where it was widely distributed).[6]

Some courts have observed that the construction of the term "advertising injury" turns on whether the phrase is included in a policy exclusion or in an insuring provision. In *American States Ins. Co. v. Canyon Creek,* 786 F.Supp. 821 (N.D.Cal.1991), the court stated:

The Court is mindful of the fact that some courts in other jurisdictions have given the term a narrower definition and construed it to mean the widespread dissemination of promotional material to the public at large. *Playboy Enterprises, Inc.*

*v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425 (7th Cir.1985) (interpreting the term in the context of an exclusion). What is significant to note, however, is that in the cases that have given the term this narrow definition, the insurer was seeking a declaration that no coverage existed under an advertising injury exclusion. Because the term here is used within the context of the insuring provisions and not within an exclusion, the term should be interpreted broadly, with any doubts as to coverage resolved in favor of the insured.

*Id.* at 828.

 This Court concludes that the term "advertising activities" as used in the Federal policies is ambiguous in that the term can be reasonably interpreted to encompass widespread distribution of materials to the public as well as direct solicitation of small groups or individuals. Therefore, the term must be construed against Federal and in favor of Plaintiffs. *See Powers,* 427 Mich. at 623, 398 N.W.2d at 420. Advertising comes in many forms and may differ in scope from business to business, depending on the product, the size of the company, the company's marketing system, or the size of the target market. For example, a company such as Microsoft might use television, radio, newspaper, and magazine advertisements to sell its software to a huge potential market, whereas a company that produces specialized software for the automotive industry, with only a handful of customers, might find it most effective to reach its target market directly by letter and an in-person meeting to explain the benefits of the product. In both instances, the businesses are promoting their products to their potential customers.

 The Court also concludes that at least some of the alleged uses of the videotapes included advertising. Apart from the fact that the videotapes were products themselves, it is alleged that they were used as

---

**6.** It is unclear whether the narrow interpretation or the broad interpretation represents the majority view. *Cf. Bank of the West,* 2 Cal.4th at 1277 n. 9, 833 P.2d at 560 n. 9 ("[m]ost of the published opinions hold that 'advertising' means widespread promotional activities directed to the pub-

lic at large"); *United States Fidelity & Guar. Co. v. Star Tech., Inc.,* 935 F.Supp. 1110, 1114 (D.Or. 1996) ("The majority of courts ... have broadly construed 'advertising activity' to encompass a variety of business solicitations").

commercials to promote motivational rallies and conventions; that they were used to recruit new distributors; and that they were used to sell Amway products. The videotapes are advertising because of Amway's peculiar use of direct solicitation to market, distribute, and sell products to the consumer. More specifically, the tapes motivate the downline distributors to make direct solicitations and potential customers to purchase products. The ultimate impact of the tapes inures to the benefit of the consumer and each distributor in the chain of distribution up to the Distributor Plaintiffs.

It is also important to bear in mind that the downline distributors in this case do not simply distribute Amway products, but are in reality the end-users as well. In other words, the recruitment of a distributor is tantamount to the sale of a product. Thus, a Distributor Plaintiff's pool of existing downliners, as well as potential downliners, are the target market for advertising which promotes Amway products.[7]

### 3. Causal Connection

Federal also argues that the allegations in the Arista complaint do not allege a causal connection between the offense and the Distributor Plaintiffs' advertising activities. The causal connection requirement—that the offense occur in the course of the named insured's advertising activities—is both a matter of interpretation and a matter of common sense. *Bank of the West*, 2 Cal.4th at 1276–77, 10 Cal.Rptr.2d 538, 833 P.2d at 560. The requirement of a nexus between the insured's advertising and the offense arises from the language of the policy itself. *See Advance Watch*, 99 F.3d at 806; *GAF Sales*, 224 Mich.App. at 264, 568 N.W.2d at 168. Courts also impose the requirement to prevent coverage for every claim having some conceivable relationship to advertising. "Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal rela-

tionship were required between 'advertising activities' and 'advertising injuries,' then 'advertising injury' coverage, alone, would encompass most claims related to the insured's business ." *Bank of the West*, 2 Cal.4th at 1276–77, 10 Cal.Rptr.2d 538, 833 P.2d at 560.

The Court finds Federal's argument to be without merit. As noted above, the Arista complaint alleges that the Distributor Plaintiffs used the infringing videotapes for a variety of purposes which included advertising. The first paragraph of each count in the Arista complaint incorporates by reference the paragraphs which allege the various types of infringing uses. (*See, e.g.,* First Am.Compl.Ex. 1 ¶ 51.) In addition, the prayer for relief at the end of each count seeks gains, profits and advantages derived from the acts of infringement set forth in the complaint. It is clear from the Arista plaintiffs' allegations that they are claiming multiple injuries caused by all acts of infringement. This conclusion is underscored by the comments of counsel for the Arista plaintiffs at the pre-trial conference in that matter. During the conference, plaintiffs' counsel indicated that plaintiffs would be seeking damages for each of the different uses:

> [The videotapes] were also used as basically commercials for their upcoming events and they were also used as promotional devices to, you know, if you do so much in sales you'll win this trip and like that. So what I'm saying—what makes this unusual and a little bit complicated on the damages side, is that you have a myriad of kinds of uses.

(Pls.' Br. in Opp'n Ex. 1 at 7.) Therefore, the allegations in the Arista complaint demonstrate the required causal connection.

The instant case is distinguishable from cases such as *Advance Watch* and *Jerry Madison Enterprises, Inc. v. Grasant Mfg. Co.,* No. 89 CIV. 2346, 1990 WL 13290 (S.D.N.Y. Feb.14, 1990), in which the courts held that the causal connection was not met

---

7. The Court has not found any reported decisions from Michigan courts which have construed the term "advertising activities" in the context of a GCL policy. In *GAF Sales*, the court observed that the term "advertising" was not defined in the policy at issue. 224 Mich.App. at 263, 568

N.W.2d at 168. Without deciding the issue, the court noted the existence of Michigan precedent in another context adopting a very broad definition of advertising, as well as insurers' ability to provide a clear definition of the term in their policies. *Id.* at 264, 568 N.W.2d at 168.

because the alleged injury did not occur in the course of the insured's advertising. In *Advance Watch*, the Sixth Circuit held that the alleged injury was the insured's infringement of the trade dress of a competitor's writing instruments, rather than the advertisement of the infringing product. 99 F.3d at 806–07. Thus, the insured's advertisement of the infringing product was merely incidental to the injury. *See id.* Similarly, in *Jerry Madison*, the court held that the injury caused by the insured's alleged infringement of copyrighted jewelry designs did not arise from the insured's acts of advertising through brochures because the complaint focused upon the infringing manufacture and sale of the jewelry. 1990 WL 13290, at *4. The distinguishing feature of the instant case is that the alleged infringing activity is not limited to the production of the videotapes, but also includes the display of the tapes to lower level distributors and to potential distributors for the purpose of advertising.

### 4. Additional Insureds

The only remaining issue relating to Federal's Duty to defend under the primary policies is whether the Distributor Plaintiffs are covered under the Federal policies as additional insureds. The parties agree that the policies in effect from May 30, 1987, through December 31, 1992, contained additional insured endorsements which covered all independent distributors of Amway products. Accordingly, Federal is obligated to defend any claims against the Distributor Plaintiffs that are alleged to have occurred during those policy years.

However, a question remains concerning which Distributor Plaintiffs are entitled to a defense for claims occurring after December 31, 1992. The policies issued after December 31, 1992, did not contain blanket additional insured endorsements. Instead, coverage was afforded only to eligible distributors who elected coverage. Federal admits that it has confirmed that about twenty out of the forty-two Distributor Plaintiffs claiming coverage actually elected coverage. Whether the remaining twenty-two Distributor Plaintiffs elected coverage remains an open question. Plaintiffs have not offered any evidence on this issue, nor has either party provided the

names of the Distributor Plaintiffs who are known to have elected coverage. Therefore, the Court will grant Plaintiffs' motion with respect to the twenty identified Distributor Plaintiffs and deny Plaintiffs' motion with respect to the remaining Distributor Plaintiffs. The Plaintiffs shall submit to the Court a list indicating the names of both the Distributor Plaintiffs for whom coverage has been confirmed and those for whom it has not been confirmed.

### 5. Defense Under Excess Policies

Plaintiffs seek as part of their motion a declaration that Federal is obligated to provide a defense under the excess policies issued to ADBA. While the policies provide for payment of defense costs, Federal has the option, but not the obligation, to provide a defense:

**DEFENSE**

1. We will NOT be obligated to assume charge of the investigation, settlement or defense of any claim made, or suit brought, or proceedings instituted against you.

(First Am. Compl.Ex. 7 at 3, Ex. 8 at 3.) Therefore, Federal does not have a duty to defend the Distributor Plaintiffs under the excess policies.

### B. Duty to Indemnify

Plaintiffs also seek a declaration that Federal has a duty to indemnify them in the underlying action. Federal asserts that a ruling that Federal has a duty to indemnify the Distributor Plaintiffs would be premature because not all of the potential damages in the underlying action were caused by advertising injury. The Court agrees with Federal because the Arista complaint alleges multiple uses of the videotapes, and it appears that some of the uses may not have caused advertising injury. Without a determination of damages and some indication of the basis for the damages, the Court cannot ascertain the extent of Federal's indemnification liability.

The Court's ruling that Federal is obligated to defend Plaintiffs in the Arista action clarifies the existing controversy between the

parties. The Court concludes that the remaining issue of Federal's duty to indemnify should be dismissed without prejudice for several reasons. First, at this juncture, the Court must assume that Federal will obey this Court's order. to defend the Distributor Plaintiffs in the Arista action and that the Court's Opinion on that issue will also guide the parties in resolving any future dispute about coverage in the event that damages are awarded against the Distributor Plaintiffs in the Arista action. Second, whether Federal will be liable for indemnification is a purely speculative issue at this time, because a successful defense may preclude a damage award. Finally, without an issue to determine, there is no case or controversy over which this Court may exercise jurisdiction. Accordingly, Plaintiffs' remaining claims under Counts I and IV will be dismissed without prejudice.

## II. Fraud or Negligent Misrepresentation

In their fraud and negligent misrepresentation claim, Plaintiffs contend that Federal changed the advertising injury coverage under the policies without notification and then fraudulently or negligently misrepresented to Plaintiffs that coverage for advertising injury was the same type of coverage that Federal had provided for years. The Court's analysis of Federal's duty to defend under the prior definition of advertising injury disposes of Plaintiffs fraud claim because Plaintiffs have received the benefit of the earlier, more extensive, definition of advertising injury. In other words, Plaintiffs have not suffered any injury, which is a required element of fraud and misrepresentation claims. *See Christensen v. Michigan State Youth Soccer Ass'n, Inc.* 218 Mich.App. 37, 44, 553 N.W.2d 638, 641 (1996)(stating elements for fraud claim); *Law Offices of Lawrence J. Stockler, P.C. v. Rose,* 174 Mich.App. 14, 33, 436 N.W.2d 70, 81 (1989) (noting requirement of detrimental reliance in negligent misrepresentation claim). Summary judgment will be granted on Plaintiffs' fraud and negligent misrepresentation claims.

## III. Unfair Trade Practices

Plaintiffs' unfair trade practices claim under the Michigan Uniform Trade Practices Act, M.C.L. §§ 500.2001—500.2093, is also based upon Federal's alleged misrepresentations that advertising injury coverage under the policies issued after 1987 remained unchanged from previous years. Even if Plaintiffs were able to prove that Federal engaged in unfair trade practices, Plaintiffs have suffered no damage as they have been given the benefit of the prior "advertising injury" definition by this Court in their claim for coverage. Therefore, this claim, like the fraud and negligent misrepresentation claims, must be dismissed. Moreover, the claim itself fails to state a claim upon which relief can be granted, because Michigan courts do not recognize a private right of action in tort under the Uniform Trade Practices Act. *See Crossley v. Allstate Ins. Co.,* 155 Mich.App. 694, 697, 400 N.W.2d 625, 627 (1986) (per curiam); *Young v. Michigan Mut. Ins. Co.,* 139 Mich. App. 600, 605–06, 362 N.W.2d 844, 846–47 (1984).

### Conclusion

For the foregoing reasons, Defendant's motions for summary judgment and/or dismissal will be granted in part and denied in part, and Plaintiff's motion for partial summary judgment will be granted in part and denied in part. Defendant's motion will be denied with regard to Counts I and IV, and will be granted with regard to Counts II and III. Plaintiffs' motion for partial summary judgment on Count IV will be granted on Federal's duty to defend on claims alleged to have occurred on or before December 31, 1992, and on all claims alleged to have occurred after December 31, 1992, involving all Distributor Plaintiffs who elected coverage. Plaintiffs' motion will be denied with respect to Federal's duty to indemnify. The Court will also grant summary judgment in part to Plaintiffs on Count I regarding Federal's duty to defend the Distributor Plaintiffs for whom coverage has been confirmed. Finally, the Court will dismiss Plaintiffs' remaining claims under Counts I and IV without prejudice. The Court will order Plaintiffs to submit to this Court and serve upon Federal a statement of their damages for defense costs incurred thus far, and Federal will have an opportunity to file objections, if any, to Plaintiffs' damages. The Court will also order Plaintiffs to submit a list to the Court indicating all Distributor Plaintiffs for whom cov-

erage has been confirmed and all Distributor Plaintiffs for whom coverage has not been confirmed.

An Order consistent with this Opinion will be entered.

### *ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment on Counts I and IV of the first amended complaint (docket no. 20) is **DENIED** and that Defendant's motion for summary judgment or for dismissal for failure to state a claim on Counts II and III (docket no. 29) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment on Count IV of the first amended complaint (docket no. 34) is **GRANTED IN PART AND DENIED IN PART.** Pursuant to 28 U.S.C. § 2201, this Court declares that Defendant is obligated to defend all Distributor Plaintiffs in the action captioned *Arista Records, Inc., et al. v. Amway Corp., et al.,* Docket No. 96–175–CV–ORL–18, on claims alleged to have occurred on or before December 31, 1992; for any claims alleged to have occurred after December 31, 1992, Defendant must defend all Plaintiffs who elected coverage under the policies issued to Amway Distributor Benefits Association. Plaintiffs' request for declaration of Defendant's liability for damages that may be awarded in the Arista action is denied.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED IN PART** to Plaintiffs on Count I consistent with the grant of summary judgment on Count IV. Within twenty-one (21) days of this Order, Plaintiffs shall submit to this Court and serve upon Defendant a statement of damages for defense costs incurred thus far in the Arista action and a list indicating the names of the Plaintiffs for whom coverage has been confirmed and those for whom coverage has not been confirmed. Defendant shall have twenty-one (21) days to file its objections to Plaintiffs' damages or to the list of Plaintiffs for whom coverage has been confirmed. Any dispute regarding the amount of damages for defense costs or the identities of Plaintiffs

who elected coverage will be resolved at trial, if necessary.

**IT IS FURTHER ORDERED** that Plaintiffs' remaining claims for damages and declaratory relief under Counts I and IV of the First Amended Complaint are **DISMISSED** without prejudice.