FITCH v STATE FARM FIRE AND CASUALTY COMPANY

Docket No. 168527. Submitted January 4, 1995, at Lansing. Decided
June 13, 1995, at 9:05 A.M.

Joyce Fitch brought an action in the Macomb Circuit Court
against State Farm Fire and Casualty Company, seeking a
declaration that the defendant had a duty under a homeown-
er's insurance policy that it had issued to the plaintiff to defend
her in a suit brought against her by William Froling in which
it had been alleged that the plaintiff had defamed and inten-
tionally inflicted emotional harm on Froling and in which
damages for humiliation, mental anguish, and business loss had
been sought. The trial court, George E. Montgomery, J.,
granted summary disposition for the defendant, finding that
the language of the insurance policy did not require coverage
for the types of injuries alleged by Froling. The plaintiff ap-
pealed.

The Court of Appeals held:

1. Whether an insurance carrier has a duty to defend its
insured in a tort action depends upon the allegations in the
complaint in the underlying action. In determining whether
coverage exists, a court first must determine whether the
claimed injury is of the type of injury covered by the insurance
policy. If the injury is of the type covered by the policy, the
court then must determine whether the cause of the injury is a
risk covered by the policy.

2. The policy issued to the plaintiff provided coverage for
bodily injury. The policy defined bodily injury as "physical
injury, sickness, or disease to a person" and specifically ex-
cluded from bodily injury "emotional distress, mental anguish,
humiliation, mental distress, mental injury, or any similar
injury unless it arises out of actual physical injury to the
person." Because Froling did not claim that he suffered physi-
cal injuries or physical manifestations from his emotional
injuries or from the injury to his reputation, no coverage exists

REFERENCES

Am Jur 2d; Insurance §§ 727, 1408, 1409.
See ALR Index under Insurance and Insurance Companies.

under the policy issued by the defendant with respect to claims for emotional injuries or injury to reputation.

3. The policy issued to the plaintiff also provided coverage for property damage. The policy defined property damage as "physical damage to or destruction of tangible property, including loss of use of this property." Froling did not allege that his tangible property was damaged or destroyed by the plaintiff's alleged defamatory statements. Froling's alleged economic and business losses are not tangible property within the meaning of the property damage provision of the policy, and, accordingly, Froling's action does not set forth a claim under the property damage coverage such as would invoke a duty to defend by the defendant. Therefore, the trial court properly granted summary disposition for the defendant on the basis that the injuries claimed in the Froling action were not of the type that were covered by the policy issued by the defendant to the plaintiff.

Affirmed.

INSURANCE — DUTY TO DEFEND.

Whether an insurance carrier has a duty to defend its insured in a tort action depends upon the allegations in the complaint in the underlying action; in determining whether coverage exists, a court first must determine whether the claimed injury is of the type of injury covered by the insurance policy; if the injury is of the type covered by the policy, the court then must determine whether the cause of the injury is a risk covered by the policy.

*Sawyer, Johnston & Chmura* (by *Richard D. Johnston*), for the plaintiff.

*Draugelis & Aston* (by *Floyd D. Virant*), for the defendant.

Before: FITZGERALD, P.J., and MARILYN KELLY and G. N. BASHARA, JR.,* JJ.

MARILYN KELLY, J. Plaintiff, Joyce Fitch, appeals as of right from a grant of summary disposition in favor of defendant, State Farm Fire and Casualty Company. MCR 2.116(C)(10). This is a

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

declaratory judgment action to determine defendant's duty to defend plaintiff. We affirm.

I

In December, 1992, plaintiff was served with a lawsuit which alleged that she had defamed and intentionally inflicted emotional harm upon William Froling. It also alleged that, as the result of public comments plaintiff made about him, Froling suffered economic loss, business loss, loss of potential business and business opportunity.

Plaintiff sought insurance coverage and defense of the lawsuit from defendant under her homeowners' insurance policy. Defendant denied her claim. Plaintiff commenced a declaratory judgment action to determine whether defendant had a duty to defend her. Defendant filed a motion for summary disposition. The judge granted the motion. He concluded that the language of the policy did not require coverage for economic loss or injury to reputation, humiliation or the other injuries Froling had alleged.

On appeal, plaintiff asserts that the trial court erred in concluding that the injuries claimed in the underlying suit were not covered by her homeowners' policy. We disagree.

II

A

We review de novo a grant of summary disposition made under MCR 2.116(C)(10). *Borman v State Farm Fire & Casualty Co,* 198 Mich App 675, 678; 499 NW2d 419 (1993). We consider the entire record, including pleadings, affidavits, depositions and other available evidence. We view all in the light most favorable to the nonmoving party and

draw all reasonable inferences in the nonmovant's favor. *Farm Bureau Mutual Ins Co of Michigan v Stark,* 437 Mich 175, 184-185; 468 NW2d 498 (1991). To uphold a summary disposition, we must be satisfied that the claim or defense cannot be proven at trial. *SSC Ass'n Ltd Partnership v Detroit General Retirement System,* 192 Mich App 360, 365; 480 NW2d 275 (1991).

B

Whether an insurance carrier has a duty to defend its insured in an underlying tort action depends upon the allegations in the complaint. *State Farm Fire & Casualty Co v Basham,* 206 Mich App 240, 242; 520 NW2d 713 (1994). The duty to defend and indemnify is not based solely on the terminology used in the pleadings in the underlying action. The court must focus also on the cause of the injury to determine whether coverage exists. *Id.,* p 242. Thus, it appears that our inquiry is twofold. Does the claimed injury fall within the meaning of the terms used in the policy? If so, is the cause of the injury covered under the policy? *Id.,* p 242.

An insurance contract is clear if it fairly admits of but one interpretation. *Stark,* p 182. A clear contract which does not contravene public policy will be enforced as written, even if inartfully or clumsily worded. *Bianchi v Automobile Club of Michigan,* 437 Mich 65, 70; 467 NW2d 17 (1991).

Contractual language is to be given its ordinary and plain meaning. Technical and strained constructions should be avoided. *Bianchi,* p 71, n 1. Terms are to be given their commonly used meanings unless clearly defined in the policy. Omitting the definition of a word which has a common usage does not create ambiguity. *Group Ins Co of*

*Michigan v Czopek,* 440 Mich 590, 596; 489 NW2d 444 (1992). A court may establish the meaning of a term through a dictionary definition. *Michigan Millers Mutual Ins Co v Bronson Plating Co,* 445 Mich 558, 568; 519 NW2d 864 (1994). If the language is clear, its construction is a question of law for the court. *Taylor v Blue Cross & Blue Shield of Michigan,* 205 Mich App 644, 649; 517 NW2d 864 (1994).

C

Plaintiff's policy provided for coverage of "bodily injury." It states:

> "[B]odily injury" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.
> Bodily injury does not include:
>
> \*   \*   \*
>
> c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

Under Michigan law, when mental injury is alleged, at least some physical manifestation of the injury is required in order to bring it within the definition of "bodily injury." *Greenman v Michigan Mutual Ins Co,* 173 Mich App 88, 92; 433 NW2d 346 (1988). Here, Froling does not claim that he suffered physical injuries or physical manifestations from his emotional injuries and injuries to his reputation.

Furthermore, in addition to the definition of "physical injury" set out above, plaintiff's policy specifically states under a heading entitled "Reductions or Eliminations of Coverage":

> The definition of bodily injury has been revised to exclude emotional and mental disorder or disturbance unless it arises out of actual physical injury.

Consequently, both because of the plain language of plaintiff's policy and Froling's claimed injuries, plaintiff cannot claim coverage for the emotional injuries and injuries to reputation in Froling's complaint. They are apparently without physical manifestation or injury and, most importantly, did not stem from an actual physical injury.

### D

Plaintiff's policy also provides coverage for "property damage." The policy states:

> "[P]roperty damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an insured is not property damage.

Plaintiff argues that Froling's claimed economic damages are a form of "property damage" which falls within this definition and gives rise to a duty to defend and indemnify her. Defendant counters that the policy's definition of "property damage" refers only to physical damage to or destruction of tangible property. The policy also provides for loss of use of the property. Defendant asserts that, under this definition, the economic and business losses Froling alleges are not "physical damage to or destruction of tangible property" and do not give rise to a duty to defend or indemnify plaintiff.

Michigan appellate courts have not yet considered the parameters of "property damage" and the meaning of "tangible property" as defined here.

Other jurisdictions, notably California, have con-

sidered the meaning of the term "tangible property" as used in general liability policies. Usually, they have concluded that economic losses such as those alleged here do not constitute "property damage." See *Chatton v Nat'l Union Fire Ins Co,* 10 Cal App 4th 846, 857-858; 13 Cal Rptr 2d 318 (1992); *Giddings v Industrial Indemnity Co,* 112 Cal App 3d 213, 219; 169 Cal Rptr 278 (1980); *Snug Harbor Ltd v Zurich Ins,* 968 F2d 538, 542 (CA 5, 1992).

While the opinions are instructive, it is unnecessary to look to other jurisdictions or to adopt their definitions of "property damage." Froling did not allege, and the record does not support, a claim that his tangible property was damaged or destroyed as a result of plaintiff's statements. Moreover, the damages Froling claims do not stem from physical damage to or destruction of tangible property. The insurance policy language under scrutiny here is concrete and specific. It is too narrow to encompass Froling's claimed economic and business losses under the aegis of "property damage." Defendant did not have a duty to defend and indemnify plaintiff in the underlying suit.

Because the claimed injuries were not covered by the policy, we need not decide if the cause of the injuries requires coverage under the policy. *State Farm v Basham, supra,* p 242.

Affirmed.