HENDERSON v STATE FARM FIRE & CASUALTY COMPANY

Docket No. 188579. Submitted May 13, 1997, at Detroit. Decided October
    14, 1997, at 9:00 A.M Leave to appeal sought.

    Daniel Henderson brought an action in the Macomb Circuit Court
    against State Farm Fire & Casualty Company, seeking to enforce
    the rights of Dawn Mysierowicz under a homeowner's insurance
    policy State Farm had issued to Bonnie Twitchell. Mysierowicz, at
    age eighteen and as the girlfriend of Twitchell's son, was residing in
    Twitchell's house when Henderson was stabbed in an altercation at
    the house. Henderson obtained a default judgment against Mysier-
    owicz in a negligence action, and Mysierowicz assigned her rights
    under the policy to Henderson. The policy defined "insured" to
    include a nonrelative of the insured if the nonrelative was a resi-
    dent of the named insured's household, was under twenty-one, and
    was in the care of the named insured or a resident relative of the
    named insured. The court, Mary A. Chrzanowski, J., granted sum-
    mary disposition for State Farm, ruling that Mysierowicz—who,
    although she had an income and had promised to contribute money
    for groceries, lived with the Twitchells essentially rent-free, was not
    required to do household chores, and could come and go as she
    pleased—had not been under the Twitchells' control, guidance,
    supervision, management, or custody and therefore had not been in
    the care of the Twitchells and could not be deemed an insured
    under the policy. Henderson appealed.

    The Court of Appeals held:

    The phrase "in the care of," which was not defined in the State
    Farm policy, is susceptible to different meanings and is therefore
    an ambiguous provision that must be construed against the insurer
    and in favor of the insured. Giving the phrase "in the care of" a
    nonstrained, nontechnical reading, Mysierowicz was in the care of
    Bonnie Twitchell by virtue of Twitchell's provision of food and shel-
    ter to Mysierowicz. Mysierowicz properly can be deemed an
    insured under the State Farm policy.

    Reversed and remanded for further proceedings.

INSURANCE — HOMEOWNER'S INSURANCE — INSUREDS — RESIDENT AND UNRE-
    LATED MINORS.

A homeowner's insurance policy that defines "insured" to include a person who is under twenty-one years of age, resides in the household of the named insured, and is in the care of the named insured, but that does not define what "in the care of" means, includes as an insured a wage-earning nonrelative minor to whom the named insured provides food and shelter in the named insured's house at essentially no cost to the minor.

*Sarvis & Herrmann, P.C.* (by *J. Steven Sarvis*), for the plaintiff.

*Draugelis & Ashton, L.L.P.* (by *Floyd C. Virant*), for the defendant.

Before: MARKEY, P.J., and JANSEN and WHITE, JJ.

PER CURIAM. Plaintiff Daniel Henderson appeals as of right from the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) and denying plaintiff's cross-motion for summary disposition pursuant to MCR 2.116(C)(9) and (10) in this action for a declaratory judgment. Plaintiff presents an issue of first impression for this Court: whether Dawn Mysierowicz, plaintiff's assignor, was "in the care of" defendant's named insured, Bonnie Twitchell, or Bonnie's son, Travis Twitchell, so that Mysierowicz qualifies as an "insured" under defendant's homeowner's liability policy. We reverse the trial court's grant of summary disposition for defendant.

I

In June 1993, plaintiff was stabbed in an altercation that took place in front of the Twitchell residence after Dawn Mysierowicz and Travis Twitchell provoked a group of strangers. Dawn Mysierowicz, then eighteen years old, was temporarily residing with her boyfriend Travis Twitchell, then twenty years old, and

Travis' mother, Bonnie Twitchell. Bonnie Twitchell owned the residence and was the only named insured under defendant's homeowner's liability policy. The insurance policy contained the following definition of the word "insured":

> 4. "insured" means you and, if residents of your household:
>    a. your relatives; and
>    b. any other person under the age of 21 who is *in the care of a person described above.* [Emphasis added.]

When Dawn Mysierowicz moved in with Travis Twitchell in March or April 1993, it was understood to be temporary; Mysierowicz' mother was in the process of divorcing her father and was unable to provide a home for her. Mysierowicz lived at the Twitchell home until August 1993. During this time, Mysierowicz was employed as a waitress, earning about $200 a week. She was responsible for purchasing all her personal items, including toiletries and clothing, and maintaining the car her parents purchased for her. Mysierowicz and Travis shared a room at the Twitchell home and also had a telephone that was in Mysierowicz' name.

Mysierowicz agreed to contribute $20 toward an average weekly grocery bill of $60, but she was occasionally unable to pay. Bonnie Twitchell acknowledged that she "let her go on that" and did not threaten to evict her under those circumstances. Mysierowicz paid no rent and contributed nothing in terms of the monthly mortgage payments, property taxes, and utilities that Bonnie Twitchell paid. In effect, Dawn Mysierowicz was permitted to live in the Twitchell's home free of charge. Bonnie Twitchell also performed all household chores and prepared the

meals when she was home. She did not require Dawn Mysierowicz to help her around the house, but Mysierowicz did prepare meals when Bonnie was not home and performed some housework such as washing dishes and doing the laundry.

Neither Travis nor Bonnie Twitchell exercised any control over Mysierowicz' activities. Bonnie also testified that she neither signed an agreement to take care of Mysierowicz nor considered herself responsible for Mysierowicz. Rather, Mysierowicz was free to come and go at will. Also, Travis Twitchell hoped that everyone regarded Mysierowicz as a member of the family and considered the three of them to be living as one family unit.

In August 1993, the Twitchell's house caught fire and the three were forced to move out of the residence. Defendant paid for the Twitchells to stay at a motel but did not pay for Mysierowicz' living expenses, although the Twitchells allowed her to stay with them at the motel. At the end of October 1993, Mysierowicz moved out and resumed living with her mother.

In February 1994, plaintiff filed a complaint against Dawn Mysierowicz and Travis Twitchell, alleging that they failed to exercise reasonable and ordinary care by unnecessarily harassing and provoking the strangers, thereby creating a reasonable likelihood of retaliation that resulted in plaintiff's injuries.[1] In response to plaintiff's negligence action, defendant retained an attorney for Travis Twitchell but refused to defend Mysierowicz because she was not an "insured" within the meaning of its policy. According to defendant,

---

[1] The merit of the underlying action is not before us.

Mysierowicz was neither a resident relative of Bonnie Twitchell or Travis Twitchell nor was she "in the care of" either insured. As a result, Mysierowicz apparently failed to defend herself in the action, and plaintiff obtained a default judgment against her in the amount of $75,000. Subsequently, Mysierowicz assigned to plaintiff any and all of her rights and claims against defendant in exchange for plaintiff's agreement not to execute on her assets, which were basically nonexistent.

In October 1994, plaintiff, as Dawn Mysierowicz' assignee, sued defendant, seeking to enforce defendant's obligation to provide coverage to Mysierowicz as its insured under Bonnie Twitchell's homeowner's policy with defendant. In June 1995, plaintiff filed a motion for summary disposition pursuant to MCR 2.116(C)(9) and (10). In July 1995, defendant, in lieu of filing an answer, moved for summary disposition pursuant to MCR 2.116(C)(10). At the hearing regarding the cross-motions for summary disposition, the trial court granted defendant's motion for summary disposition on the record, ruling as follows:

> This Court finds that Dawn Mysierowicz was at the age of 18, [a] legal adult suffering from no physical or mental disabilities. She resided with the Twitchels (phonetic) and was *not under the[ir] control, guidance, supervision, management or custody.* As such it is clear to this Court that State Farm's policy of insurance did not provide coverage to her because she was not, "In the care of," the insureds. Thus, this Court finds no genuine issue as to any material fact and the defendant's request for declaratory judgment shall enter

within 21 days of this Court dismissing this action.[2] [Emphasis added.]

## II

The issue of first impression that plaintiff raises before this Court is whether Dawn Mysierowicz was "in the care of" either the named insured or the named insured's resident relative, thus entitling Mysierowicz to the liability coverage contained in defendant's homeowner's policy. We find that she was "in the care of" Bonnie Twitchell.

### A

We review de novo the grant of summary disposition pursuant to MCR 2.116(C)(10), examining the entire record, including pleadings, affidavits, depositions, admissions, and other documentary evidence, and construing all reasonable inferences arising from the evidence in a light most favorable to the nonmoving party. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993); *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994); *Fitch v State Farm Fire & Casualty Co*, 211 Mich App 468, 470-471; 536 NW2d 273 (1995). A motion for summary disposition pursuant to MCR 2.116(C)(10) may be granted when, except with regard to the amount of damages, there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law; stated otherwise, we ask whether a record might be developed that leaves open an issue upon which reasonable minds could differ. *Radtke, supra;*

---

[2] The trial court's parting comments to the parties were: "Please appeal. We need some case law on that," referring to the insurance contract language.

*Bertrand v Alan Ford, Inc*, 449 Mich 606, 617-618; 537 NW2d 185 (1995). The court may not make factual findings or weigh credibility in deciding a motion for summary disposition. *Featherly v Teledyne Industries, Inc*, 194 Mich App 352, 357; 486 NW2d 361 (1992). We will uphold the grant of summary disposition if we are satisfied that the claim or defense cannot be proved at trial. *Fitch, supra* at 471.

Moreover, with respect to interpreting terminology contained in an insurance contract, we must give the policy language its plain meaning, apply the definitions of terms as set forth in the contract, and when the terms are not defined in the contract give them definitions that are in accord with the common usage of the forms. *GAF Sales & Service, Inc v Hastings Mut Ins Co*, 224 Mich App 259, 261; 568 NW2d 165 (1997); *Cavalier Mfg Co v Employers Ins of Wausau (On Remand)*, 222 Mich App 89, 94; 564 NW2d 68 (1997). Technical or strained construction of terms should be avoided. *Fitch, supra* at 471-472. While the omission of a definition for a word that has common usage does not create an ambiguity in the insurance contract, *Fitch, supra* at 471, we will resolve any ambiguities against the insurer and in favor of coverage, *GAF Sales & Service, supra*. Also, a court may establish the meaning of a term through a dictionary definition. *Michigan Millers Mut Ins Co v Bronson Plating Co*, 445 Mich 558, 568; 519 NW2d 864 (1994); *Fitch, supra* at 472.

Moreover, concomitant with the rules of construction is the rule of reasonable expectation, which states that a court examines whether a policyholder, upon reading the contract, was led to a reasonable expectation of coverage. *Vanguard Ins Co v Clarke,*

438 Mich 463, 472; 475 NW2d 48 (1991). If so, coverage will be afforded. *Fire Ins Exchange v Diehl,* 450 Mich 678, 687; 545 NW2d 602 (1996).

B

At the outset, we note that there are no Michigan cases directly on point regarding the meaning of the phrase "in the care of," and defendant's insurance contract fails to define the phrase.[3] We will, therefore, first turn to the dictionary definition of the term "care" and then examine the case law from other states that have interpreted the phrase "in the care of" as that phrase is used in homeowner's insurance policies.

Black's Law Dictionary (6th ed), p 213, defines "care" in pertinent part as follows:

> *Watchful attention; concern;* custody; diligence, discretion, caution; opposite of negligence or carelessness, prudence, regard, preservation, security; support; vigilance. *To be concerned with, and to attend to, the needs of oneself or another.* [Emphasis added.]

*The Random House Webster's College Dictionary* (1992), p 206, defines "care" as including "a troubled state of mind; worry or concern," "protection; charge," "temporary keeping," "to be concerned; have thought or regard," and "to feel concern about." Indeed, given these divergent meanings associated with the word "care," we believe that the phrase "in the care of" may be reasonably understood to have different meanings and is, therefore, ambiguous.

---

[3] Phrases such as "in the care of" are often included in "omnibus clauses" of insurance contracts. 7A Appleman, Insurance Law & Practice, § 4501.04.

C

Courts in other jurisdictions have interpreted the phrase "in the care of" as used in homeowner's insurance policies more broadly than defendant, which believes the phrase connotes only support, supervision, charge, custody, and responsibility. Both parties rely on *State Farm Fire & Casualty Co v Odom*, 799 F2d 247 (CA 6, 1986), a case involving a State Farm policy with language almost identical to the instant policy.[4] In *Odom*, the Sixth Circuit Court of Appeals found that a child, who lived with her mother in the named insured's house but was unrelated to the insured, was "in the care of" the insured because the insured provided the child with significant physical care by giving her housing, clothing, and food, and by sharing in the child's care. *Id.* at 250. When the child was fatally injured while the insured was watching her, the mother sued the insured for wrongful death. The Sixth Circuit Court of Appeals agreed with State Farm that (1) the child was an "insured" under the policy because she was "in the care of" the named insured, and (2) the policy excluded liability coverage for injuries suffered by an insured. Accordingly, State Farm was not obligated under the policy to provide coverage or a defense arising out of the insured's alleged liability for the child's injuries and death. *Id.* at 249-250.

Notably, in *Odom*, State Farm sought to have the child deemed an "insured" under the policy because such a finding would preclude coverage, while here,

---

[4] In *Odom, supra* at 249, the insurance contract defined the term "insured" as "you and the following residents of your household: a. your relatives; b. any other person under the age of 21 who is in the care of any person named above."

the same defendant is arguing to prevent this Court from finding that Dawn Mysierowicz is an insured under Bonnie Twitchell's policy.[5]

We also find persuasive the Louisiana Court of Appeals' decision in *United States Fidelity & Guaranty Co v Richardson*, 486 So 2d 929, 930-931 (La App, 1986), where the court was asked to determine whether a fourteen-year-old daughter of the insured's girlfriend who was living in the insured's home was "in the care of" the insured for purposes of coverage under the insured's homeowner's policy. The policy language at issue defined an "insured" as "residents of the named insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any insured." *Id.* at 931. The court found that all three individuals lived together in the insured's house under an unwritten agreement for sharing expenses, i.e., the insured paid the mortgage, bought his food, and took care of his vehicle, while the insured's girlfriend paid for utilities, telephone bills, her car, purchased food for her and her daughter, and occasionally contributed to the mortgage payment. *Id.* at 930-931. In concluding that the fourteen-year-old was "in the care of" the insured and was,

---

[5] Given the *Odom* decision, the prevalence of the clause at issue, and the recurrence of questions concerning the proper application of the clause in both the context of excluding coverage for claims by the insured and providing coverage to an insured, consistency leads us to ask the question whether Mysierowicz is more appropriately included in the class of persons who will be afforded indemnity under the insurance contract, but who can expect no recovery under the policy when suing an insured, or the class of persons who will be afforded no indemnity coverage, but whose claims against an insured will lead to coverage under the policy. We conclude that Mysierowicz, who was eighteen at the time and living with the Twitchells as part of the family during the period her mother was unable to provide a home for her, is appropriately included in the former class.

therefore, an "insured" under the policy, the court observed:

> It is clear that on the basis of the agreement between the parties, the payments made by James Richardson [the insured] did directly benefit Demetric Ayio. He was caring for the child by letting her stay in his home and by paying for both the maintenance of the home and his other agreed-upon expenses. Further, the bills and other expenses paid by James Richardson allowed Evelyn to devote more of her own income to Demetric's needs. Even though he did not consider himself as having guardianship of Demetric, James was much more than a nameless, unseen benefactor. We conclude, therefore, that the trial court was correct in its finding that the child was "in the care of" James Richardson under the policy. [*Id.* at 931.]

Thus, the insured's homeowner's insurance company was required to provide insurance coverage for the girl and her mother arising out of injuries that the girl inflicted on her classmate when she hit him in the eye with a piece of glass. *Id.*

Similarly, in *Nationwide Mut Ins Co v Anderson*, 118 NC App 92; 453 SE2d 542 (1995), a woman and her eighteen-year-old son lived with the named insured in his home. The son was sued for wrongful death when a shotgun he held discharged and killed Kevin Anderson. Subsequently, the plaintiff, who issued a homeowner's policy to the insured, filed an action for declaratory judgment against the defendants seeking a determination whether the son was an insured under the policy. *Id.* at 92. The policy defined "insured" as follows:

> "insured" means you and residents of your household who are:
>> a. your relatives; or

b. other persons under the age of 21 and in the care of
any person named above. [*Id.*]

The lower court granted summary judgment for the
plaintiff. *Id.* Reversing and finding that the son was
an insured under the policy, the North Carolina Court
of Appeals stated that the named insured, the mother,
and the son acted as a family for many years; the son
even referred to the insured as his stepfather. *Id.* at
95. Despite the fact that the son was eighteen when
the incident occurred, he remained dependent on the
insured and his mother for the basic necessities of
life, including food, clothing, and shelter. *Id.* at 94-95.
Also, it was irrelevant that the son provided for his
own support in some ways because the policy lan-
guage did not contain a distinction based on whether
the person "in the care of" the insured could support
himself. *Id.*

D

Giving the phrase "in the care of" a nonstrained,
nontechnical reading, and in light of the reasoning set
forth in these cases that construed nearly identical
provisions, we find that Dawn Mysierowicz was "in
the care of" defendant's insured, Bonnie Twitchell,
and that Mysierowicz is an "insured" under defend-
ant's homeowner's policy.

First, as indicated by the dictionary definitions and
foregoing case law, the phrase "in the care of" may be
considered ambiguous in the context of a household
liability insurance policy. Thus, we must construe the
phrase against defendant and in favor of plaintiff, as
Mysierowicz' assignee. *GAF Sales & Service, supra.*
Second, although the phrase "under the care of" has
been interpreted to mean "guidance, supervision, con-

trol, management or custody of another," *Bruno v Hartford Accident & Indemnity Co*, 337 So 2d 241, 244-245 (La App, 1976), *Odom*, *Richardson*, and *Anderson* support plaintiff's claim that the phrase is subject to broader meanings that include the provision of support to another.[6]

More significantly, on the basis of *Richardson, supra*, we endorse a broader interpretation of "in the care of" where, as here, Bonnie Twitchell permitted Mysierowicz to stay in her home without requiring Mysierowicz to pay for either the maintenance of the home or other living expenses. Bonnie Twitchell, not Mysierowicz' mother, provided for Mysierowicz during the approximately six months that Mysierowicz spent in the Twitchell home. As in *Richardson, supra*, Bonnie Twitchell took care of nearly all household expenses, enabling Mysierowicz to spend more of her income on herself. Moreover, unlike a "nameless benefactor," Bonnie Twitchell provided Dawn Mysierowicz food, shelter, and supplies without exercising control over her. Arguably, however, by doing so, she assumed, in larger measure, responsibility for Mysierowicz' well-being. As in *Anderson, supra*, even though Mysierowicz provided for her own support in some ways (i.e., she purchased her own clothing and personal articles and maintained her vehicle), her limited contributions toward the maintenance of the

---

[6] While the Sixth Circuit Court of Appeals in *Odom, supra* at 250, found that "in the care of" was unambiguous in the context of that case, the court reasoned that the phrase could not be understood to mean only "legal care" as opposed to "legal and physical care," where the named insured furnishes housing, clothing, food, and security for a household resident. In so concluding, *Odom* clearly indicates that the phrase "in the care of" would be ambiguous if the question were whether the phrase meant "legal care" versus "physical care." *Id.*

household evidences that she was primarily dependent upon Bonnie Twitchell to provide her with food and shelter. Mysierowicz moved from her mother's home to Bonnie Twitchell's home, remained with the Twitchells when they moved into a hotel after their house was damaged by fire, and went back to her mother's home when she left the Twitchells. She never lived by herself during this period. While Mysierowicz was residing in the Twitchell home, she was considered a member of the family, as in *Odom, supra*, thereby providing further support for the conclusion that she was "in the care of" Bonnie Twitchell. Finally, as in *Anderson, supra*, Mysierowicz' age did not preclude her from being dependent on Bonnie Twitchell for the basic necessities of food and shelter, even though she provided some of her own support.

By construing the phrase "in the care of" in favor of coverage and applying the law to the essentially uncontested material facts, we find that no genuine issue of material fact exists: Bonnie Twitchell provided virtually total financial support to Dawn Mysierowicz on the date when plaintiff was stabbed. We therefore believe that even though Dawn Mysierowicz lived with the Twitchells under a temporary arrangement, was free to leave at any time, contributed little to the household, and was not answerable to Bonnie Twitchell or Travis Twitchell, she came within the definition of an "insured" because she was "in the care of" Bonnie Twitchell, the named insured under defendant's homeowner's policy. Accordingly, we reverse the trial court's grant of summary disposition in favor of defendant.

In our ruling today, we do not decide whether defendant is liable for the $75,000 default judgment

entered against Dawn Mysierowicz, because the extent of coverage, if coverage were found, was not raised before the trial court or on appeal. This issue must be resolved in further proceedings on remand.

Reversed and remanded for further proceedings consistent with this opinion. As the prevailing party, plaintiff may tax costs pursuant to MCR 7.219.