NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0586n.06

Case No. 20-2189

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NEW HAMILTON LIQUOR STORE,
INC.; MR. K & HAMILTON, LLC,

       Plaintiffs - Appellants,

v.

AMGUARD INSURANCE COMPANY,

       Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Dec 16, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE: CLAY, GIBBONS, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. An arsonist set New Hamilton Liquor Store on fire on August 28, 2016. The store was insured by AmGuard under a policy contract with a modifying Protective Safeguard Endorsement that required New Hamilton to install an "Automatic Fire Alarm." AmGuard denied New Hamilton's property damage claim under the policy, asserting that New Hamilton did not have an automatic fire alarm. New Hamilton then sued AmGuard for breach of contract in the Wayne County Circuit Court, and AmGuard removed the case to the Eastern District of Michigan.

After the parties filed cross-motions for summary judgment, the district court held the contract was unambiguous and determined that New Hamilton did not have an automatic fire alarm as required by the insurance policy. The district court accordingly granted AmGuard's motion for summary judgment and denied New Hamilton's motion. Because the Protective Safeguard

Endorsement is unambiguous in its requirement of an automatic fire alarm and reasonable minds could not find that New Hamilton had such an automatic alarm, we affirm.

**I**

New Hamilton Liquor Store, Inc. and Mr. K & Hamilton, LLC ("New Hamilton") brought a breach of contract action after their insurance carrier, AmGuard Insurance Company ("AmGuard"), denied New Hamilton's property insurance claim for damages arising out of a fire. Talib Hermiz purchased New Hamilton Liquor Store, Inc. d/b/a Mr. K's Food and Liquor, located at 12150 Hamilton Avenue, in March 2009. Hermiz met with insurance agent Rod Kathawa three times in April or May of 2016, and they decided on an AmGuard insurance plan. AmGuard issued the insurance policy to New Hamilton effective July 21, 2016 through July 21, 2017. The alarm system at New Hamilton consisted of three motion-sensor alarm devices that were installed and maintained by National Alarm, Inc. The alarm devices were mounted in separate locations: above the front entry door, in the back storage area above the entry door, and at the cashier's area behind the liquor counter.

On August 27, 2016, New Hamilton's employees armed the alarm system and locked the building at 11:49 P.M. At 3:51 A.M. on August 28, 2016, all three alarms went off within a span of five seconds after detecting motion. The alarms notified National Alarm that there was movement in the building, and National Alarm placed two calls to the store at 3:51 A.M. National Alarm then called the local police department at 3:52 A.M. The police department dispatched an officer to the scene. The Highland Park Fire Department ("HPFD") received an alarm call at 3:54 A.M. requesting a response to a commercial building fire at 12150 Hamilton Avenue. The police department allegedly placed the call to the fire department.

The fire department arrived on the scene at 3:58 A.M. and forced entry into the building through the locked door to extinguish the fire. Nathan Erwin of the HPFD testified that the firefighters were able to extinguish the active flames within the first ten to fifteen minutes of their arrival, but that the fire was not "under control" until 6:10 A.M. DE 36-8, Pls.' Mot. Summ. J., Page ID 2053. Erwin investigated the origin and cause of the fire on behalf of the HPFD and determined that the fire had been intentionally set. He testified that someone had climbed onto the roof of the building, cut a rectangular hole in the roof, poured gasoline through the hole, and ignited the gasoline with a Molotov cocktail. Hermiz, the building's owner, was not involved in committing the arson, and the identity of the arsonists is unknown.

New Hamilton submitted a claim to AmGuard for its losses resulting from the fire. AmGuard denied liability for all damages, stating that based on its investigation, a review of the facts of the claim, and the insurance policy, New Hamilton had not complied with the protective safeguards endorsement to the policy. The contract between New Hamilton and AmGuard contained a one-page modifier, titled "Protective Safeguard Endorsement" ("PSE"). DE 36-2, Pls.' Mot. Summ. J., Page ID 2029. The headline of this PSE stated, in bolded capital letters, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." *Id.* Beneath the headline, a table indicated that the "Protective Safeguards Symbols Applicable" was code "P-2" and the "Description of 'P-9' if Applicable" was "Local Burglar Alarm Local Fire Alarm." *Id.* The contract modifier appeared as follows:

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

**SCHEDULE**

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable | Description Of "P-9" If Applicable: |
|---|---|---|---|
| 001 | 001 | P-2 | Local Burglar Alarm Local Fire Alarm |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

---

*Id.* Subpart A of the PSE provided definitions for protective safeguards, including "P-2,"

"Automatic Fire Alarm." *Id.* The PSE specified:

> **A.** The following is added to the **Property General Conditions** in **Section I – Property: PROTECTIVE SAFEGUARDS**
>
> > **1.** As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.
> >
> > **2.** The protective safeguards to which this endorsement applies are identified by the following symbols:
> >
> > . . .
> >
> > > **b. "P-2" Automatic Fire Alarm**, protecting the entire building, that is:
> > > > **(1)** Connected to a central station; or
> > > >
> > > > **(2)** Reporting to a public or private fire alarm station.
> > >
> > > . . .
> > >
> > > **e. "P-9"**, the protective system described in the Schedule.

*Id.* Subpart B amended the contract's provisions on exclusions, providing:

> **B.** We will not pay for loss or damages caused by or resulting from fire, if prior to the fire, you:
>
> > **1.** Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

> **2.** Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

*Id.* New Hamilton's owner, Hermiz, testified that he read the PSE when he signed the policy contract, but he "[did] not understand it 100 percent." DE 37-11, Def.'s Mot. Summ. J., Page ID 2373.

In denying New Hamilton's claim, AmGuard stated it had inspected the premises and retained an investigator, and this "inspection/investigation did not disclose any evidence of an automatic fire alarm system at the premises." DE 36-10, Pls.' Mot. Summ. J., Page ID 2064. AmGuard added, "[t]he first call came in as a 911 call reporting smoke coming from the building"; "[t]he second call was received by the police department as a motion detector"; and "[f]irst responders did not hear any alarms typical with a fire/smoke alarm system." *Id.* AmGuard concluded New Hamilton's burglar alarm system monitored by National Alarm did not constitute an "automatic fire alarm either connected to a central station or reporting to a public or private fire alarm station," and accordingly denied all liability for damages sustained in the fire. *Id.*

New Hamilton sued AmGuard for breach of contract in the Wayne County Circuit Court for the State of Michigan and AmGuard removed the case to the United States District Court for the Eastern District of Michigan. New Hamilton alleged that at the time of the fire, it had an automatic fire alarm system connected to a central station that complied with AmGuard's PSE. It argued that its alarm system detected the fire at the building without human intervention and reported the activity to a central station that notified public authorities. New Hamilton asserted it directly or substantially complied with the PSE, and in the alternative, that "automatic fire alarm" is ambiguous and its interpretation must be construed in New Hamilton's favor. New Hamilton and AmGuard filed cross-motions for summary judgment.

The district court interpreted the plain language of the contract under Michigan state law and held that the contract was not ambiguous. DE 48, Order, Page ID 3903, 3905–06. It then determined New Hamilton's alarm "was an automatic burglary alarm, not an automatic fire alarm." *Id.* at 3906. The court held that even if the PSE were ambiguous, New Hamilton "would still be unable to demonstrate a material dispute of fact as to the overwhelming extrinsic evidence against them." *Id.* at 3907. Because New Hamilton failed to maintain an automatic fire alarm, in contravention to the PSE, the court granted AmGuard's motion for summary judgment and denied New Hamilton's. The court also denied New Hamilton's motion for reconsideration.

## II

The district court's grant of summary judgment is reviewed de novo. *Equitable Life Assur. Soc'y of the United States v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). We will affirm the district court if the record "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). We view the facts and reasonable factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A genuine issue of material fact exists when there are 'disputes over facts that might affect the outcome of the suit under the governing law.'" *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A denial of a motion for reconsideration is ordinarily "reviewed for an abuse of discretion, but where [the] motion seeks reconsideration of a grant of summary judgment . . . we conduct a *de novo* review." *Bd. of Tr. of the Plumbers, Pipe Fitters & Mech. Equip. Serv., Loc. Union No. 392 Pension Fund v. B & B Mech. Servs., Inc.*, 813 F.3d 603, 608 (6th Cir. 2015) (citation omitted).

Federal courts sitting in diversity jurisdiction, as we are here, "are to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The relevant state substantive law comes from Michigan, where "issues concerning the proper interpretation and application of a contract of insurance" are also reviewed de novo. *Cohen v. Auto Club Ins. Ass'n*, 463 Mich. 525, 528, 620 N.W.2d 840, 842 (2001).

### III

Because reasonable minds could not disagree as to the unambiguous nature of the property insurance contract between New Hamilton and AmGuard, and because that New Hamilton did not have an automatic fire alarm as required by the contract, we affirm.

### A

Under Michigan law, an insurance contract must be enforced in accordance with its terms. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207, 476 N.W.2d 392, 398 (1991). A court may not hold an insurance company liable for a risk that it did not assume. *Auto–Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431, 434 (1992). A court reviewing an insurance policy dispute should not create ambiguity in an insurance policy where the terms of the contract are clear and precise. *Id*. "The language of a contract must be construed according to its plain and ordinary meaning, rather than technical or constrained constructions." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (citing *Dillon v. DeNooyer Chevrolet Geo*, 217 Mich. App. 163, 550 N.W.2d 846, 848 (1996)). "Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided." *McCoig Materials, LLC v. Galui Const., Inc.*, 295 Mich. App. 684, 694, 818 N.W.2d 410, 416 (2012).

"The fact that a policy does not define a relevant term does not render the policy ambiguous." *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 354, 596 N.W.2d 190, 194 (1999) (citation omitted). A contract is ambiguous when its words may reasonably be understood in different ways. *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 460 Mich. 558, 566, 596 N.W.2d 915, 919 (1999). "A court may establish the meaning of a term through a dictionary definition," *Fitch v. State Farm Fire & Cas. Co.*, 211 Mich. App. 468, 472, 536 N.W.2d 273, 275 (1995), but reviewing courts "do not ascribe ambiguity to words simply because dictionary publishers are obliged to define words differently to avoid possible plagiarism." *Henderson*, 460 Mich. at 354–55 (citing *Upjohn Co.*, 438 Mich. at 209 n.8). When the language at issue "is clear and unambiguous, its meaning is a question of law." *Port Huron Educ. Ass'n. v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323, 550 N.W.2d 228, 237 (1996). However, if the language is "unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Id.*; *see also Henderson*, 460 Mich. at 596 (explaining that "if reasonable minds could disagree about the conclusions to be drawn from the facts, a question for the factfinder exists").

The Michigan Supreme Court has clarified that "[t]he rule of reasonable expectations clearly has no application to unambiguous contracts." *Wilkie v. Auto-Owners Ins. Co.*, 469 Mich. 41, 60, 664 N.W.2d 776, 786 (2003). An individual's alleged "reasonable expectations" cannot supersede a contract's clear language because the policyholder cannot claim to have reasonably expected something other than the plain language of the contract. *Id.* at 62. If the language is ambiguous, however, then "longstanding principles of contract law require that the ambiguous provision be construed against the drafter." *Id.* at 61 (quoting *Singer v. American States Ins.*, 245 Mich. App. 370, 381 n.8, 631 N.W.2d 34 (2001)).

We must first determine whether there was an ambiguity in the insurance policy contract between New Hamilton and AmGuard. The PSE required New Hamilton to have an "Automatic Fire Alarm, protecting the entire building, that is: (1) Connected to a central station; or (2) Reporting to a public or private fire alarm station." DE 36-2, Pls.' Mot. Summ. J., Page ID 2029. Although the PSE defined certain terms, such as "automatic sprinkler system," it did not define the term "automatic fire alarm." *Id.* But the absence of a definition does not alone render the policy ambiguous. *See Henderson*, 460 Mich. at 354. The parties do not dispute the language in the PSE—they dispute what that language reasonably means.

New Hamilton argues the PSE is ambiguous because its "automatic fire alarm" requirement reasonably has multiple interpretations. New Hamilton asserts that under the PSE, an "automatic fire alarm" was only required to be a system that "'protected the entire building' and, without human intervention, reported to a 'central station.'" CA6 R. 21, Appellant Br., at 29. New Hamilton argues its alarm system met those requirements because (1) the system detected motion and radiating heat energy; (2) it did so seconds after the fire was ignited; (3) the system reported numerous alarms to National Alarm's central station; (4) National notified the police, who notified the fire department; (5) the fire department arrived at the building within seven minutes of the system's first alarm; and (6) the fire department "controlled" the fire within ten to fifteen minutes of arrival.[1] Essentially, because its motion sensor alarm system detected the fire in the building and alerted National Alarm that there was motion inside the store, New Hamilton argues it was an automatic fire alarm.

---

[1] The record indicates that the firefighters were able to "extinguish" the active flames within the first ten to fifteen minutes of their arrival at 3:58 A.M., but that the fire was not "under control" until 6:10 A.M. DE 36-8, Pls.' Mot. Summ. J., Page ID 2053.

AmGuard argues that New Hamilton's motion-sensor alarm system was a burglar alarm that was automatic. AmGuard emphasizes that the system was not designed to alert for fires and did not protect the entire building. It points to National Alarm's Customer Activity Report from August 28, 2016, which registered that a burglar alarm and a motion detector had been activated—indicating suspicion of an intruder, not of a fire. This is why, AmGuard argues, National Alarm contacted the Detroit Police Department and not a local fire department. AmGuard notes "[t]here was no direct contact between National Alarm and the Fire Department." CA6 R. 22, Appellee Br., at 15. AmGuard argues that even if New Hamilton's burglar alarm system did activate during this fire, it does not constitute an "automatic fire alarm" in the plain, everyday understanding of a fire alarm.

The district court found "fire alarm" was an unambiguous term. The court turned to various dictionary definitions, including Merriam Webster (defining a fire alarm as "a device that makes a loud sound to warn people when there is a fire"), the Longman Dictionary (defining a fire alarm as "a piece of equipment that makes a loud noise to warn people of a fire in a building"), and the Oxford English Dictionary (defining a fire alarm as "a device or system designed to raise the alarm in the event of a fire, typically by emitting a loud noise"). DE 48, Order, Page ID 3905 (citations omitted). The court stated that each of these three definitions commonly has "a sense that the term 'fire alarm' unambiguously refers to a device meant to alert people of the presence of a fire." *Id.* This doomed New Hamilton's argument, as its motion-sensor alarm system would not have warned anyone in the building of a fire: the alarm was set only in the evenings, after the individuals in the building left for the night, because it alerted to any human presence. It was a burglary alarm meant to prevent unwanted intrusions, not to protect against fires, otherwise it would continuously operate during business hours while individuals were present in the building. The court noted that the New Hamilton alarm system's status as a burglary alarm is why the alarms were "clustered

around the entrance to the building"; why National Alarm received a notification of "INTERIOR BURG"; and why National Alarm dispatched the police department—not the fire department—to the scene. *Id.* at 3906.

We affirm the district court's holding that "automatic fire alarm" is unambiguous. "True linguistic ambiguities are rather 'rare in contract cases.'" *Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 842 F.3d 422, 426 (6th Cir. 2016) (citing E. Allen Farnsworth, *"Meaning" in the Law of Contracts*, 76 Yale L.J. 939, 954 (1967)). Here, the PSE required business owners to install an automatic fire alarm protecting the entire building that either (1) connected to a central station, or (2) reported to a public or private fire alarm station. A reasonable person with an ordinary understanding of the English language would understand the phrase "automatic fire alarm" to mean an alarm that is designed to detect fires and alert any nearby persons to the fire. This comports with the various dictionary definitions of "fire alarm" found in Merriam Webster, the Longman Dictionary, and the Oxford English Dictionary, each of which emphasizes the function of a fire alarm system as warning people about the danger of a fire through a loud noise. *See* Merriam Webster, "Fire Alarm," https://www.merriam-webster.com/dictionary/fire%20alarm (last visited Sept. 30, 2021); Longman, "Fire Alarm," https://www.ldoceonline.com/dictionary/fire-alarm 20alarm (last visited Sept. 30, 2021); Oxford English Dictionary, "Fire Alarm," https://www.oed.com/view/Entry/70512?rskey=tswxLo&result=1&isAdvanced=false (last visited Sept. 30, 2021). Under Michigan state law, this is unambiguous because the phrase cannot be reasonably understood in a different way. *Nikkel*, 460 Mich. at 566.

New Hamilton argues that the PSE is also ambiguous because under the "P-9" section of the schedule table, it states "Local Burglar Alarm Local Fire Alarm." CA6 R. 21, Appellant Br., at 52–53. New Hamilton asserts this constitutes an ambiguity because it indicates that one system

can serve as both a burglar and fire alarm. But this argument fails. Under Michigan law, every word and phrase of a contract is given effect and the contract is interpreted as a whole. *McCoig Materials*, 295 Mich. App. at 694. Here, reading the PSE in its entirety, "P-2" is a required protective safeguard and it refers specifically to an "automatic fire alarm." To adopt New Hamilton's reasoning that "P-9" is ambiguous because it could be read to *not* require a fire alarm would render "P-2" meaningless and ignore the plain and ordinary meaning of the contract.

Furthermore, although New Hamilton's owner, Hermiz, indicated that he "[did] not understand [the PSE] 100 percent," DE 37-11, Def.'s Mot. Summ. J., Page ID 2373, insured individuals are charged with knowledge of the terms and conditions of their insurance policies. *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 396, 729 N.W.2d 277, 284 (2006). It is well-established in Michigan law that "an insured is obligated to read his or her insurance policy and raise any questions about the coverage within a reasonable time after the policy is issued." *Id.* at 394–95.

Despite finding that the PSE was unambiguous, the district court went on to analyze extrinsic evidence in determining whether there was a material dispute of fact. When a contract is unambiguous, the reviewing court looks only to "the four corners of the written instrument" and does not consider extrinsic evidence in determining the parties' intent. *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 607, 576 N.W.2d 392, 396 (1997). When language is clear and unambiguous, determining its meaning is a question of law. *Port Huron Educ. Ass'n.*, 452 Mich. at 323. Because here the contract is unambiguous, the determination of the parties' intent is not at issue and interpretation is a question of law. Therefore, there is no need to consider extrinsic evidence such as Hermiz's understanding of the contract.

**B**

The insurance contract, as modified by the PSE, required New Hamilton to have a functioning automatic fire alarm system. This alarm system had to protect the entire building and had to be either "(1) Connected to a central station; or (2) Reporting to a public or private fire alarm station." DE 36-2, Pls.' Mot. Summ. J., Page ID 2029. Possession and maintenance of an automatic fire alarm was "a condition of this insurance." *Id.* New Hamilton's alarm system consisted of three motion-detecting alarm devices that were installed by and connected to National Alarm, Inc. The alarm devices were mounted in separate locations: above the front entry door, in the back storage area above the entry door, and at the cashier's area behind the liquor counter. New Hamilton's service agreement with National Alarm began in June 2004, before Hermiz purchased the store. The agreement stipulates that National Alarm would install and maintain service on an alarm system. The agreement specifies that the alarm system is a "Burglar Alarm" and a "Hold Up Alarm" by marking an "X" for those categories; it also specifies the alarm system is "Cellular Back up" by listing it under "other." DE 37-9, Def.'s Mot. Summ. J., Page ID 2228. The "Fire Alarm" category is located between "Burglar Alarm" and "Hold Up Alarm," and it is not marked. *Id.* This alone is a clear indication that the alarm system was not an automatic fire alarm.

The evening before the fire, on August 27, 2016, New Hamilton employees shut down the store for the night by arming the alarm system and locking the building. Automatic fire alarms do not need to be armed; they are always operating because fires can occur at any time, not just after-hours. If the fire had started at 3:51 P.M. rather than 3:51 A.M., the motion-sensing alarm system would not have been active. When the three devices activated at 3:51 A.M. on August 28, 2016, they connected to National Alarm's central station. But where a fire alarm system would have

indicated to National Alarm that a fire had broken out at the store, the National Alarm Customer Activity Report reflects that New Hamilton's alarms registered the incident as "INTERIOR BURG 'ZN5 BACKROOM MOTION'"; "INTERIOR BURG 'ZN4 OFFICE MOTION'"; and "INTERIOR BURG 'ZN3 STORE MOTION.'" DE 36-6, Pls.' Mot. Summ. J., Page ID 2041. The alarms alerted National Alarm to motion and a potential burglary, not to the presence of heat, smoke, or fire. National Alarm placed two calls to the store to see if the motion sensor devices had been mistakenly activated, and then called the local police department at 3:52 A.M. The police department dispatched an officer to the scene, and it is believed that the police ultimately called the HPFD at 3:54 A.M. First responders did not hear any alarms as would be typical with a fire or smoke alarm system. These facts further confirm New Hamilton's burglar alarm system was not an automatic fire alarm system.

Michigan courts define a "condition precedent" as a "fact or event which the parties intend to exist or take place before this is a right to performance." *Hy King Assocs., Inc. v. Versatech Mfg. Indus., Inc.*, 826 F. Supp. 231, 238 (E.D. Mich. 1993) (citing *MacDonald v. Perry*, 342 Mich. 578, 70 N.W.2d 721 (1955)). Here, the maintenance of an automatic fire alarm is a condition precedent to receiving coverage because subpart B specifies that AmGuard "will not pay for loss or damages caused by or resulting from fire if, prior to the fire, you . . . [f]ailed to maintain any protective safeguard listed in the Schedule above." DE 36-2, Pls.' Mot. Summ. J., Page ID 2029.

New Hamilton's briefings repeatedly emphasize that the fire department arrived on the scene by 3:58 A.M., "within seven minutes of the system's first alarm." CA6 R. 21, Appellant's Br., at 25. Because its alarm system in due course resulted in the fire department being notified of the fire and arriving to extinguish the fire, New Hamilton asserts that it substantially complied with the PSE's requirement that it maintain an automatic fire alarm, and that it therefore

substantially complied with the conditions precedent to insurance coverage. In its Order Denying Plaintiffs' Motion for Reconsideration, the district court expressly rejected New Hamilton's argument that conditions precedent, like the requirement of an automatic fire alarm in their policy's PSE, need only be satisfied by substantial performance. On appeal, New Hamilton asserts that whether the doctrine of substantial performance applies to an express condition precedent in a Protective Safeguards Endorsement is an issue of first impression for this court, and it urges us to reverse the district court's holding. But we need not decide this matter because even if substantial performance is applicable here, New Hamilton's motion sensor alarm devices do not substantially comply with the PSE.

Here, the relevant question is not whether New Hamilton's alarm system *eventually* resulted in the fire department's arrival at the scene; rather, it is whether the alarm system notified a central station or a public or private fire alarm station about the fire. New Hamilton's motion-sensing devices did not, in fact, notify National Alarm that there was a fire at the premises. We need not determine whether the doctrine of substantial performance applies to an express condition precedent in a protective safeguard endorsement because New Hamilton was not in actual or substantial compliance with the PSE.

## IV

We affirm the district court's grant of AmGuard's motion for summary judgment and its denial of New Hamilton's motion for summary judgment. The district court correctly held that the policy's modifying Protective Safeguard Endorsement is unambiguous in its requirement of an automatic fire alarm. New Hamilton's alarm system was not an automatic fire alarm system, and it therefore was not in compliance with the policy. A court may not hold an insurance company liable for a risk that it did not assume, and accordingly AmGuard is not liable here.